Ms. Keeble, we are ready to hear you as soon as you are ready to proceed. Thank you, Your Honor, and may it please the court and counsel, my name is Shira Keeble and I represent Tyrone Outley, who is the appellant in this case. This case is controlled by well settled 10th Circuit law governing the waiver of counsel at trial. Judge Miles LaGrange's Feretta inquiry did not adequately cover a single enumerated von Malky factor. When she was done, Mr. Outley didn't even know that he was charged with three separate counts. She then delegated her non-delegable duty of advisement to the prosecutor. And still, Mr. Outley was never told the elements, any lesser included or possible defenses. Most recently in United States v. Hammett, another case where a defendant was erroneously granted the right to represent himself in the middle of trial. This court explained that knowledge of the nature of the charges, that is to say the elements and possible defenses, is essential and no knowing and intelligent waiver of counsel can be made without it. How does the trial court advise a pro se defendant about what defenses the pro se defendant might raise without stepping over the line and serving as counsel to the pro se defendant? And that's a good question. That's a good question, Your Honor. There's a case that I didn't cite in my brief, and I can file a 28-J letter that was about a waiver during a plea, which is U.S. v. Williamson 806 F. 2nd 216, where they talk about give an example of a complete defense to murder. The idea here isn't that you're trying to advise the defendant about what to do, but that the defendant understands what it is that a lawyer could do. And in order to do that, they must understand why it is that just a person off the street doesn't understand all of what goes into defending a case. The trial court, as I recall the record said, counsel would be beneficial to you because counsel may recognize defenses that you don't and could advise you about those. Is that close enough? Your Honor, that's not close enough. I think I can give you an example that's on the other side of the line, and what I'd invite everyone here to do is bring yourselves back to before law school, before college, before you graduated from high school. Imagine that you're a person who failed the GED exam and who'd been receiving supplemental security income because of cognitive deficits almost your entire adult life. Do you know what the word defense means? Do you know what the word element means? Simply being told that those are things that exist, I don't think is enough. An example of what a court could do is say, let me give you an example. You're charged with a 924C, which requires that the government prove three things. I suppose that's a little bit less than what they need to prove, but three general things. One, you possessed a firearm. Two, there was a crime of violence or a drug trafficking offense. And three, that there was a connection between the two. I'm being a little bit cavalier with exactly what the elements are here. What a defense is, is you don't have to simply say, no, I didn't do it. You can attack just one of those things. You can attack, was there a drug trafficking offense? Did I possess a firearm? Or is there a connection between the two? That way you're giving the person an example so that they understand what a lawyer's job is. That a lawyer comes in and looks at all of the puzzle pieces and knows that you can just take one away and still win the case. What troubled me about this case was the lawyer had spent no time whatsoever on this case. Three visits over several months. And it looked to me like he had decided how they would do it and didn't really care what the defendant wanted to do. Is that a fair reading of the record? Yes, Your Honor. I think it is a fair reading of the record. And, you know, in U.S. v. Hansen, this court said appointment of standby counsel sheds virtually no light on whether there was a knowing and intelligent waiver of counsel. Here, Judge Kelly, based on what you're saying, I think we know even more than that, which is that we can't expect that the defense attorney went over almost anything with this defendant. I recently switched to appeals from being a trial lawyer, and it just astounds me. I cannot imagine going to trial after having spent so little time. I think that one of the other things that that's important to is there's a theme in the case law where, you know, if a defendant really is dedicated to representing himself. He comes in at arraignment. He is a tax law denier. He absolutely refuses to be represented by counsel. This court has been more liberal with the Feretta warnings. Although it's still, as in Hansen, has required that the Von Muelke factors be addressed by the judge. But that's not what we have here. We have a person who really what he wanted was a new lawyer who was going to spend time with him so that he wouldn't be walking into his first day of trial without knowing what was going to happen. And if the defense is that he knew he was, he just didn't know. If we agree with you that the judge's Feretta colloquy was insufficient, don't we then look at the totality of the circumstances to determine whether, in fact, the defendant should be given a new trial? And looking at that, did the prosecutors follow up colloquy cure the defects? Yes, to the first question, which is in Hansen, as in many other cases, this court said in limited circumstances, limited circumstances, the totality of the circumstances can overcome a deficient Feretta inquiry. But I think there's a few things that we need to think about as background. I think that it's important to think of the government's advisement as part of these totality of the circumstances and not as part of the Feretta inquiry. And here I would draw the court's attention to, again, USP Hansen to footnote six, which says the constitutional responsibility to conceive of and propound the proper inquiries rests squarely on the shoulders of the trial court and cannot be delegated to others. Now we move in and say, OK, if we're looking at the totality of the circumstances, we're really not happy that the government stepped in to do this instead of maybe suggesting things to the court that the court might want to address. We've already decided that the Supreme Court essentially said that in Von Mulkey. So this is a long standing thing that we're talking about. The judge is supposed to investigate as long and as thoroughly as the circumstances of the case before him demand. This is not supposed to be a mere procedural formality. And now we turn to the totality of the circumstances. And again, here we have, I'll begin because Your Honor's question asks specifically about what the government advised, that even after the government advisement, again, he hadn't been told the elements, any possible defenses, or any lesser included. And again, Your Honor, with the question about, well, just saying an attorney might know defenses that you don't know, is that enough? That's not enough. This court has excused not giving defenses in the past, but it's done so when it's like, well, but they told you what the elements were. So these are kind of part of the package of the nature of the offense. And here, yes, the government corrected a misapprehension that he thought all the way through into the first day of trial that he was only charged with one or two crimes, but it didn't really get into the nature of the charges. Well, counsel, can I just stop you at that point, just so I understand? You're saying that the government's explanation that there were three charges, that cured that problem or not? Is that not cured? No, Your Honor, I don't think it cured the problem. I think that it demonstrated that there had been this problem throughout the Feretta inquiry, and it maybe was one step towards making sure he understood the nature of the charges. But I don't think that you can come out from this record and say that he understood the nature of the charges. Right. But just on that number of counts problem, do you believe he understood the number of counts after the government explained at least that? I think yes, because he did have a back and forth with the government about it. Did he understand the import of that? I don't think that we could go that far and say, yes, he internalized it and understood the import and understood how that related to him waiving the right to counsel at trial. Again, I'd like to draw the court's attention to the other very recent published Feretta case, which is U.S. v. Hammett. So in U.S. v. Hammett, that was another case where the defendant was asking to represent himself in the middle of trial. And there, it wasn't sufficient, despite the belief of the dissent, it wasn't sufficient to advise him of the nature of the charges that we knew he'd already gone through an arraignment. We also knew that at the beginning of a trial, the judge reads the indictment to the jury, that that's not sufficient when you're looking at the totality of the circumstances to say this is one of the limited cases where we overcome this deficient Feretta hearing. Do any of our cases require the court to inform the defendant that he's not going to get a continuance? They do not, specifically. But they do say that all other facts essential to a broad understanding of the whole matter. That's the last von Muelke factor. And this court hasn't skipped over that. So this court has made a real serious requirement that they understand that they're going to have to abide by the rules of evidence and the rules of criminal procedure, and that they're not going to be given leeway simply because they're pro se at trial. The court also has acknowledged that if a defendant is bringing things up or has a certain reason for wanting to go pro se, that that's something that should be the topic in a Feretta inquiry. So the case, again, that I mentioned earlier, but I'm going to put in a 28-J letter, Williamson, says not only do courts indulge every reasonable presumption against waiver, but particularly that's the case where there's no inquiry into the reason for waiver. I think that's an analogy here. But by analogy, if a person says, if given sufficient time, I can represent myself, the court should be triggered to say, well, you understand that you might not be given sufficient time. And again, I'll give you an example. I know that this court doesn't require any specific script. But in Hammett, where the advisement wasn't adequate, the judge did do something that I think was very important. The defendant in Hammett articulated that he wanted to represent himself in order to recross-examine certain witnesses and ask certain questions. And the judge says, so you're going to give up your right to have counsel represent you on the understanding that you're going to be able to ask all these questions and get answers. I don't know if you'll be able to get answers to all your questions, because I don't know if any of your questions will be objected to and how I will rule under the federal rules of evidence, because I don't know what the questions are. Do you understand that? And so I think that that's a signal of a way that the court can do what I would call in a wake for at a hearing. There's no script, because what's really important is to have this back and forth with the defendant and really ensure they understand that they're giving up essentially the core constitutional right that the courts rely on to protect so many other constitutional rights. At the end of the day here, Mr. Outley had not – I do not believe that he was in any position to make a knowing and intelligent waiver of his right to counsel, given the severely deficient Feretta Inquiry and given that the totality of the record here doesn't place us in one of those limited circumstance-type cases where, say, the person is a lawyer. Or the person has previously filed proposed jury instructions that appear in this court's cases that allow the court to say, you know, under the totality of the circumstances, this is sufficient. If there are no other questions at this time, I would like to reserve the remainder of my time. It's reserved. Mr. McCrary? Thank you, Your Honor. May it please the court, my name is David McCrary, and I represent the United States of America in this case. We're here today because in the middle of trial, the defendant, Tyrone Outley, decided to fire his attorney, proceed pro se, and he did so both with knowledge and understanding of the consequences of that. That decision was made following a litany of questions, both by the court and by government counsel, that laid out the full spectrum of possible consequences, the risks associated with it, and the obligations of the defendant to follow the general rules. It falls squarely within that practical or reasonable awareness that's required for purposes of understanding whether or not that decision was made of knowing and volunteering. Counsel, was he told the specific penalties for each of the charges? Yes, Your Honor, he was. Was he told what defenses could be available? No, Your Honor, he was not specifically delineated what defenses were available, but I would also point out this court has routinely ruled on that question of whether or not defenses are available and ultimately concluded that consistent with the background analysis that's here, which requires no specific or precise litany of questions, that that can be overcome. And I would refer the court to the Williamson case that Ms. Keeble referenced earlier. I think this is a perfect example. In the Williamson case, there was an allegation by the defendant that he was not made aware of the elements or the defenses to the crime. What the court said there, and ultimately upholding the fact that the waiver was both knowing and voluntary, was that it might be possible that an individual would have to be advised of a specific defense if the court was made aware of the consequences and circumstances that would be advised to do that defense. Counsel, you said that he was told of the penalties. My understanding was that he was never, the court never discussed the possible penalties that he might face. Never. Your Honor, it is true that the court during the phoretic holoquy itself did not specifically advise him of that fact. That information was conveyed to him by the government in some follow up questioning. And haven't we in the past said that the government is not the one to do the advising? It's the court. Your Honor, that language does exist. I think that it exists in a context. It's one of those things that I think has been, frankly, blown out of proportion. A lot of these phoretic hearings are done ex parte. And so in that instance, the court would be the one who would have to require and convey all those things. In this particular case, the government was present and in court situations. In Hammett, didn't they, didn't the court suggest that you had to go through the defenses? In Hammett, yes, there was a reference to the fact that you had to go through the defenses. Did the court not understand that this lawyer had only seen this gentleman three times in four months and had not discussed his trial with him at all? That is the that is the fact that were set forth at the beginning of trial when there was a request for continuance. Right. At that point, that would have been a good basis if you were the one that was the defendant. If your lawyer had only come by to see you for a few minutes, three times in four months and hadn't asked you how you wanted the case to be tried or what your position was on anything. Well, Your Honor, I would suggest that there might be, again, going back to the Williamson case, reason to go to two defenses if there was any suggestion as to what the possible defense would be. The problem with what defense counsel is suggesting is should be the standard and what we're reading the standard to be through your line of questioning is that it does transform the court into an advocate, which is for the defendant, which is the number one thing that they're advised will not happen. Well, is it between being an advocate and telling somebody what the facts are? Well, Your Honor, that actually 10 to 20 or two to 10 or whatever it might be. Well, Your Honor, that so I would say that knowledge of the of the crimes and the possible punishment is separate from the defenses, and I think that they should be analyzed separately. Well, as counsel pointed out in her opening argument, if you even if the judge sort of generically had explained, here are the elements that have the prosecution has to prove against you. And if you could disprove this one or challenge that one, these are defenses to them proving their case. You're not really stepping over the line of being an advocate. You're giving them clear information. And here I don't see anything where either the court or the prosecutor explained the elements of the various charges. Well, Your Honor, as it relates to the elements component of it again, I would I would cite back to the Williamson case. It turns out to be very helpful in terms of this. Have you read the hammock case that came well after the the Wilson case? I did. And while we're speaking about it off Wilson, doesn't it? I think that the big distinction between Hammett and frankly Hansen and the cases that are cited by the defendant and this case is specifically that issue of knowledge of of information that was conveyed by the defendant that specifically put the court on knowledge or on notice. Excuse me, that there needed to be additional information. So in Hansen, for instance, there was the the tax protester who specifically said, no, I don't understand that. I need to follow the rules of evidence and follow the rules of criminal procedure. In Hammett, there was a defendant who specifically said, no, I want to know what the elements are. And the court denied doing it. The court also misstated the penalties and all of those instances. There was something within the colloquy and the circumstances which gave the court specific knowledge that follow up information had to be conveyed. And, Your Honor, I would point to the Hansen case as an example of why this one was appropriate. Within Hansen, the court notes that prior to the specific question, do you understand that you have to follow the rules of evidence and follow the rules of civil criminal procedure? Excuse me. The court made the statement. Do you understand that there are rules that are going to be applicable to both parties and that both parties have to follow it? And the defendant answered, yes. What the Hansen court said was had the inquiry stopped at that point, it likely could have affirmed. But it went on and asked a question at which point there was a specific no. And then there was a requirement that there be follow up conversations based on that specific note. And that's the big distinction between this case and all the cases cited by the defendant where there is a specific thing in the protocol or the surrounding circumstances which puts the court on notice that there is something that is lacking in the defendant's understanding. Let me raise one with you. The court warned Mr. Otley of the risk of representing himself pro se. And he said, fighting for my rights or my freedom, and I can do that pro se if allowed time to prepare. Isn't that pretty good evidence that that the court should have warned Mr. Otley that there wouldn't be any continuances? Well, Your Honor, I would note that there was, in fact, a continuance, albeit a short one, not the length that he wanted. Government did and the entire couple hours. Yes, Your Honor. Now, the distinction is that Mr. Otley was asking for time to go not to prepare for witnesses in terms of cross-examining them, but to go get a series of witnesses which were related to an entire different event. And the conversation around continuances for the record, all of that took place after the foretocol was over, after the decision was made. What the court did know at the time was that it was going to give him a period of time to prepare and readjust. And so it did. And there hasn't been any case, as Ms. Keeville notes, in which the continuance itself has been a ground for finding an inadequate foretocol. And at the end of the day, this doesn't fall into the Von Hockey or the Von Malte prong of all other facts essential to a broad understanding of the whole matter. Your Honor, if there was something, if there wasn't any sort of continuance whatsoever, if there wasn't time for him to prepare, I think this would be a closer question. But ultimately, at the end of the day, Mr. Otley was given time to consider what he wants to ask. And in fact, I would note that the entire point why Mr. Otley asked to proceed pro se is because he knew exactly what he wanted to ask. He had a disagreement with his attorney as to the theory of the defense. And in that instance, I would say that an extended continuance would not be necessary. And so the difference, Your Honors, I would suggest is that this is a situation where the court went through, the government went through, asked a series of questions and took Mr. Otley at his word that he understood them. And without any additional information that could further require follow up conversations, then I don't think that there is a need for the court or any other individual to pursue these secondary lines of inquiry. At the end of the day, I mean, the perfect example is the defense, right? Mr. Otley sits here and says, well, the problem is that, you know, defenses weren't acknowledged. Now, if the court wants to say that an example defense would be required, I would point out that the very example, you know, the very issues that Mr. Miskiewicz noted were issues that he tackled. He said that he didn't know or that he didn't possess the gun. He said that he didn't possess the crack cocaine. He knew how he wanted to attack this case. Yeah, but he wasn't permitted to attack the case the way he wanted to. Excuse me? He was not permitted to attack the case he wanted to because the court refused to reconsider the suppression that he granted at the defense request. This this other evidence was for an entirely different purpose. The same evidence. Your Honor, I fully admit that on appeal, Miskiewicz has been able to articulate a basis separate and apart from. We've been given the opportunity to. Well, what I'm saying is that one of the one of the challenges drop out. I don't understand why you're pushing so hard on that. Well, one of the challenges on that front is that Mr. Otley never articulated a basis separate and apart from the prior issue. So there was nothing for the court to rule on. He never provided any information that would allow the court to consider this alternative basis, but more to the point. Well, he was told that the court had ruled and it was not going to be permitted, period. Well, all that specifically. Your Honor, I would note that the government twice invited Mr. Otley to ask questions about the February 20th incident. And in fact, there was a question that was asked by Mr. Otley specifically to Mr. Castleberry when he asked whether or not you'd ever seen me before. The government objected. And in fact, the court allowed that question to continue. But at the end of the day, the real the real issue here is that the court ruling did not preclude Mr. Otley from from the defense that he wanted to do. If, as Ms. Keeble suggests, the only thing that he wanted to accomplish through that follow up line of inquiry as to the February incident was to establish that there was some level of bias that the officers thought. And bias is not important. No, no, no. I'm saying if that's the only purpose, if it's just that the defendant or the excuse me, the law enforcement officer thought that Mr. Otley got away with something. Mr. Otley could ask that question entirely consistent with the defense count or with the ruling. But Mr. Otley wanted to put on was that these officers planted this evidence on me because they were angry that I alluded them on the prior stop. And he can't make that argument without putting on evidence what happened in the prior stop. Well, Your Honor, first of all, I would point out that most of the evidence that Mr. Otley sought to put on fingerprint evidence, DNA technicians has nothing to do with the ultimate question of whether or not officers thought that Mr. Otley got away. He's trying to give the jury some reason to believe why these officers would do such a thing as to plant evidence on you. I mean, that's a simple question. You know, Sergeant Castleberry, do you believe that I previously got away with a crime completely consistent with prior court's rulings? And at that point, we've established bias. But even to the even to the point, Mr. Otley was allowed to ask Sergeant Castleberry whether or not he'd ever seen him before. And in that regard, I think that there were lines of questioning that existed, not precluded by the court's ruling that would have gone to the ultimate question of bias. Now, whether or not Mr. Otley wants to put on a secondary trial that involves fingerprint technicians, DNA experts. That is the question that the court was considering for purposes of whether or not to grant that elongated continuance. And that is what the court ultimately ruled is that we're not going to have this second sideshow argument. In the context of whether or not Mr. Otley was or is able to establish bias amongst the officers, that's fine. He still had the ability to ask that question. And even had he asked the question, even had he been allowed, that's ultimately harmless because the only issue that's being put forth is that Mr. Otley previously was suspected of running from law enforcement. He can't prove that he didn't do it because the only issue that he wants is bias. So then the only question that's now put before the jury is this guy who ran in this particular case is running again a month earlier. So I don't see how that moves the needle in terms of establishing that the evidence was harmless. Thank you, Your Honor. We've asked that you affirm. Thank you. And I believe you have some time for rebuttal. Thank you, Your Honor. Briefly, the government's most recent argument, I don't think under the ruling, Mr. Otley could have asked any of those questions when he even asked the question, have you ever seen my face before? The government objected and it was only allowed because the answer was going to be no. And if the answer was going to be yes, it would have alluded to the February stop and it would not have been allowed. Similarly, do you think I've gotten away with something in the past? Absolutely. Alludes to the February stop. And it would only have been the first question in a necessary series of questions. I just briefly the Williamson case that I'm referring to is different than the Williamson case that the government is referring to. Apologies for the confusion. I confused myself on that. That's why I'm going to need to file a 28 J letter. The case that the government was referring to is certainly the worst case that the 10th Circuit has for Mr. Otley. But there is so little information in that case. And there's so much discussion in the more recent cases of Hansen and Hammett that I don't think that it actually helps the government win this case. And then in Hammett, the reason that the defendant said, I want to know what the elements are, is because the judge asked him, do you know what the elements are? That question needed to be at the very least, that question needed to be asked, and that was not asked here. And finally, it is true that much of the conversation about the continuance happened after the alleged waiver. But Judge McHugh, the question you refer or the statement you reference that my client made, that was earlier. That was before and would have put the judge on notice. Thank you, Your Honors. Thank you, Counsel. We will take this matter under advisement. We appreciate your argument and your briefing on this issue.